MICHAEL J. HEYMAN
United States Attorney

C. CODY TIRPAK
SETH M. BEAUSANG
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: cody.tirpak@usdoj.gov
Email: seth.beausang@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>  vs.<br><br>CHANTEL LYNN FIELDS,<br><br>                Defendant. | No. 3:25-cr-00050-SLG-KFR |

**MEMORANDUM IN SUPPORT OF DETENTION**

Comes now the United States to proffer for the Court the reasons why the Court should order the defendant's pretrial detention. See *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986) ("[T]he government may proceed in a detention hearing by proffer or hearsay.").

As explained below, the Chelsea Inn has been maintained as a drug premises, with one of its primary purposes being the distribution and use of drugs.

The defendant Chantel Fields has been integral in maintaining the Chelsea Inn for the use and benefit of herself, drug traffickers, and drug users. She has both trafficked drugs from the Chelsea Inn herself and managed the hotel as a drug house. Under her supervision, the Chelsea Inn has become a blight on the community, serving as a safe haven for traffickers and users. Accordingly, to protect the public and ensure Fields's future appearance, the United States respectfully requests Fields's detention pending trial.

**FACTUAL BACKGROUND**

The Federal Bureau of Investigation (FBI) and the Anchorage Police Department (APD) have been investigating allegations of ongoing local and interstate drug trafficking, human trafficking, wire fraud, violent person offenses, and property offenses involving persons living at, working at, or frequenting the Chelsea Inn hotel, located at 3836 Spenard Road in Anchorage, Alaska and pictured below. The defendant Chantel Fields is a manager at the Chelsea Inn and is believed to have been employed there during each of the events described below.

//
//
//
//
//
//
//

*U.S. v. Fields*
3:25-cr-00050-SLG-KFR   Page 2 of 13
Case 3:25-cr-00050-SLG-KFR   Document 7   Filed 08/25/25   Page 2 of 13



**Front of Chelsea Inn Hotel (Anchorage Police, 2024)**



**Main entrance of Chelsea Inn Hotel, southeast corner (Google Streetview, 2025)**

//

//

*U.S. v. Fields*
3:25-cr-00050-SLG-KFR                Page 3 of 13
           Case 3:25-cr-00050-SLG-KFR        Document 7     Filed 08/25/25     Page 3 of 13

One of the primary catalysts for the investigation was the drug-related murder of Duane Fields Jr. on October 21, 2020. Duane Fields Jr., who was the father of defendant Chantel Fields, was killed during a gun fight in the lobby of the Chelsea Inn. Notably, during APD's investigation into that murder, they recovered surveillance video from inside the hotel showing Fields removing guns and alleged drugs from the body of her deceased father prior to APD's arrival at the hotel.

Another catalyst for this investigation was a burglary in early October 2021 that took place at Fields's residence off Huffman Road. Fields reported several missing items, including guns, sports cards, the ashes of her father Duane Fields, and $100,000 worth of designer shoes. Further investigation revealed that an unknown quantity of fentanyl pills was also taken, along with an unknown amount of money. The following month, Fields and several of her associates from the Chelsea Inn confronted an individual they suspected of being involved in the burglary. This confrontation quickly turned violent, and the suspected individual was pistol whipped. During the assault, the individual was threatened with a lethal dose of heroin, causing them to attempt to flee by jumping from a second story railing, sustaining multiple broken bones in the process.

Despite these incidents, Fields and several associates from the Chelsea Inn continued to distribute drugs, including from the Chelsea Inn itself. A review of communications between those co-conspirators revealed numerous references to drug transactions, transfer of firearms between prohibited persons, violent acts in furtherance of drug distribution, importation of methamphetamine, heroin and fentanyl from Mexico and California, travel for purpose of drug distribution, identification of

*U.S. v. Fields*
3:25-cr-00050-SLG-KFR         Page 4 of 13
Case 3:25-cr-00050-SLG-KFR   Document 7   Filed 08/25/25   Page 4 of 13

drug customers, identification of other co-conspirators, and financial transactions in furtherance of drug importation and distribution.

The violence that often accompanies drug trafficking also continued at the Chelsea Inn. On May 29, 2023, a shooting occurred in the parking lot of the Chelsea Inn, after which APD patrol officers found an adult victim deceased from a gunshot wound. The subsequent investigation resulted in State of Alaska charges against Nathan Williams for First- and Second-Degree Murder (3AN-23-04114CR) and Josie Harvey for Tampering with Physical Evidence (3AN-23-04115CR). Both Williams and Harvey were known associates and co-conspirators of Fields. Harvey was also a co-worker, having been the night manager since 2020. As with the murder of Duane Fields, APD's investigation into this murder again uncovered surveillance video of Chelsea Inn employees attempting to manipulate or tamper with evidence to preserve the status quo. Harvey deleted significant portions of the Chelsea Inn's own security video that had recorded the events leading up to and through the homicide. However, the deleted footage was recovered, resulting in video of Williams shooting the victim, as well as Harvey manipulating the security camera hardware behind the front desk of the Chelsea Inn.

On February 2, 2025, FBI conducted a controlled purchase of fentanyl from dealers inside the Chelsea Inn, recorded using audio and video surveillance. "Individual 1" entered the Chelsea Inn with money visible in their hand and asked to see an individual named "Boog," who was allegedly one of Fields's boyfriends. Two employees demanded a $20 door charge from Individual 1, which was paid. Another individual then exited Room 222, which was located just off the lobby and served as a staff lounge and office,

*U.S. v. Fields*
3:25-cr-00050-SLG-KFR          Page 5 of 13
Case 3:25-cr-00050-SLG-KFR     Document 7     Filed 08/25/25     Page 5 of 13

and told Individual 1 that "Boog" was not available. Individual 1 was then approached in the lobby by "Individual 2" who placed a handgun in Individual 1's stomach. Individual 2 then took the money at gunpoint from Individual 1 and instructed Individual 1 to follow them to a room downstairs. There, Individual 2 gave Individual 1 fentanyl powder, though less than the value of the money taken off them. Individual 1 subsequently left the Chelsea Inn and turned over the fentanyl to law enforcement.

On February 7, 2025, a victim was assaulted and kidnapped from the Chelsea Inn. The following day, APD searched the Chelsea Inn pursuant to a warrant. When uniformed APD officers in police vehicles with lights activated approached the front of the hotel and announced their presence, several people began exiting windows on the opposite side of the hotel and running away. At the front door, multiple people were seen running through the hotel, including a security guard wearing a "SECURITY" vest.

Fields was working at the time and initially denied having keys for any rooms. Eventually, Fields turned the keys over to APD, who searched several rooms and seized the following: nine firearms, hundreds of rounds of ammunition, approximately 440 grams of suspected cocaine, approximately 10 grams of suspected crack cocaine, approximately 53 grams of suspected psilocybin mushrooms, approximately 736 grams of suspected methamphetamine, approximately 110 suspected fentanyl pills, and over $2,800 in currency suspected to be proceeds of drug trafficking. A significant portion of this evidence was seized from a room being used as a staff lounge or office.

The search was also notable for what it did not find. The only business records in relation to a hotel operation that could be found were at the front desk, consisting of a spiral

*U.S. v. Fields*
3:25-cr-00050-SLG-KFR            Page 6 of 13
           Case 3:25-cr-00050-SLG-KFR   Document 7   Filed 08/25/25   Page 6 of 13

bound notebook with a heavily edited list of rooms and amounts owed for each room. Instead of using legal names and corresponding copies of ID cards for the hotel's occupants, the notebook generally referred to "guests" only by their street names.

On June 8, 2025, a Chelsea Inn employee was murdered at the main entry door of the hotel while attempting to enforce the $20 door charge. Fields was again working at the time and told the responding officers that the victim was responsible for collecting the $20 door charge. During APD's investigation, officers observed what purported to be the Chelsea Inn's Municipality of Anchorage business license. The license had been heavily modified, with multiple areas crossed out and altered in pen. Those altered sections included the Name of Owner/Form of Business and the number of rooms authorized. As of the filing of this memorandum, the Chelsea Inn does not have a valid municipal business license.

As part of its investigation into Fields and the drug trafficking based out of the Chelsea Inn, the FBI interviewed a significant number of witnesses, including current and former employees. They described the Chelsea Inn as a drug house masquerading as a hotel. While the hotel does occasionally host legitimate guests, that is the exception. Multiple dealers operate from the Chelsea Inn with impunity, and it is well understood in the Anchorage drug milieu that the Chelsea Inn is a place where drugs can be bought or sold.

The witnesses also described Fields's conduct as a manager at the Chelsea Inn. They reported that Fields sells drugs from the hotel, directs customers to dealers living in the hotel, enforces drug debt repayment through threats and acts of violence, and controls

*U.S. v. Fields*
3:25-cr-00050-SLG-KFR          Page 7 of 13
　　Case 3:25-cr-00050-SLG-KFR    Document 7    Filed 08/25/25    Page 7 of 13

who is allowed to visit the hotel. Fields was also reported to collect or enforce collection of the $20 door fee for people visiting the Chelsea Inn.

In June and July of 2025, the FBI conducted multiple controlled buy operations from the Chelsea Inn. These buys verified that the Chelsea Inn was continuing to be operated as a place where drugs were freely used and distributed and resulted in the seizure of methamphetamine and fentanyl.

On August 22, 2025, the FBI and APD searched the Chelsea Inn and two residences in Anchorage pursuant to federal warrants. The execution of those warrants resulted in the arrest of six individuals, including Fields, for narcotics crimes and outstanding arrest warrants. Law enforcement also seized eleven firearms, including two behind the front desk of the hotel, more than a thousand rounds of ammunition, approximately half a kilogram of suspected fentanyl powder and pills, approximately 36 grams of suspected methamphetamine, approximately 86 grams of suboxone strips, approximately 200 grams of additional controlled substances in both powder and pill form, and approximately $45,000 in cash.

**ARGUMENT**

**1. The United States is entitled to a detention hearing**

The United States moves for a detention hearing under 18 U.S.C. § 3142(f)(1)(C). Fields was indicted by the grand jury for one count of Conspiracy to Maintain Drug-Involved Premises, in violation of 21 U.S.C. §§ 856(a)(1) and 846. This is an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.).

*U.S. v. Fields*
3:25-cr-00050-SLG-KFR          Page 8 of 13
Case 3:25-cr-00050-SLG-KFR   Document 7   Filed 08/25/25   Page 8 of 13

## 2. Detention is presumed

Because there is probable cause to believe Fields committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in 21 U.S.C. § 801 et seq., there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A). The presumption is not erased if Fields proffers evidence to rebut it. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Rather, the presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Id.* (*quoting United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir.1986)). The Government bears the ultimate burden of showing by preponderance of evidence that Fields poses a flight risk, and by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community. *United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991).

## 3. The statutory factors weigh in favor of detention

In assessing whether pretrial release or detention is appropriate, Congress has specified factors that should guide the Court's inquiry. Weighing these factors in this case supports the conclusion that pretrial detention is appropriate.

### 3.1. The nature and circumstances of the offense charged

The gravity of Fields's conduct in this case cannot be understated. Were she to have merely distributed drugs herself, the nature and circumstances of her offense would be significant. This Court is well aware of the devastating impact that opioids and

*U.S. v. Fields*
3:25-cr-00050-SLG-KFR  Page 9 of 13
Case 3:25-cr-00050-SLG-KFR    Document 7    Filed 08/25/25    Page 9 of 13

methamphetamine have had on this community and on this country. According to the National Institute on Drug Abuse, more than 105,000 Americans fatally overdosed on drugs in 2023, including approximately 79,000 involving opioids such as fentanyl and heroin, and approximately 35,000 involving psychostimulants such as methamphetamine.[1]

This case, however, goes beyond mere distribution. Fields maintained a hotel on one of Anchorage's busiest streets whose business was providing a safe haven where dealers and users alike could transact their deadly business as freely as they liked. Fields has stored and distributed drugs at the Chelsea Inn, directed customers to dealers living in the Chelsea Inn, enforced drug debt repayment through threats and acts of violence, and controlled who was allowed to visit the Chelsea Inn. Fields has also collected or enforced the collection of a $20 "door fee" for people visiting the Chelsea Inn for the purpose of buying drugs.

The results of the Chelsea Inn's maintenance as a drug premises, at Fields's direction and efforts, are tragic. In the past five years, APD has responded to over 1,000 emergency calls for service at the Chelsea Inn, many of which were directly related to drug use or distribution, including fatal and non-fatal overdoses. Others were requests to respond to violent crime, such as homicide, assault, robbery, kidnapping, and domestic disputes.

//

---

[1] *See* National Institute on Drug Abuse, *Drug Overdose Deaths: Facts and Figures*, https://nida.nih.gov/research-topics/trends-statistics/overdose-death-rates#Fig4 (last updated August 2024).

*U.S. v. Fields*
3:25-cr-00050-SLG-KFR　　　　Page 10 of 13
Case 3:25-cr-00050-SLG-KFR　　Document 7　　Filed 08/25/25　　Page 10 of 13

That Fields would carry on this business year after year, despite the near constant interaction with APD, should raise significant concern about Fields's willingness and ability to follow any conditions of release imposed by the Court.

### 3.2. The weight of the evidence against the person

The evidence against Fields is strong. The facts proffered above come from many sources, including a significant number of cooperating witnesses with first-hand knowledge of the procedures, practices, and purpose of the Chelsea Inn, controlled purchases of narcotics from the Chelsea Inn and the dealers who operate from its premises, and the scores of police contacts at the Chelsea Inn over the last five years. The variety and corroboration of this evidence demonstrates that Fields is highly likely to endanger the public if she is released by continuing to facilitate the distribution of drugs. This also makes it highly likely that a substantial punishment will be imposed. Fields is facing a sentence of up to 20 years, with supervised release to follow. This exposure alone gives Fields significant incentive to either flee or attempt to hinder the prosecution of her case.

### 3.3. The history and characteristics of the person

Fields is a lifelong criminal. Her first conviction is from 2009, when she was 20 years old. Since then, Fields has consistently been in custody or on probation for a criminal conviction. She has been convicted of six felonies, including being a felon in possession of a firearm. Her criminal history is also notable for three convictions for violating conditions of release and two convictions for providing false information or a false report to law enforcement. Fields has multiple and significant factors that increase the

*U.S. v. Fields*
3:25-cr-00050-SLG-KFR            Page 11 of 13
Case 3:25-cr-00050-SLG-KFR     Document 7     Filed 08/25/25     Page 11 of 13

risk of both nonappearance and danger to the community, including release violations, lack of legitimate employment, and patterns of similar criminal activity. In short, there is nothing about Fields's history or characteristics that can provide the Court any assurance that she can be safely released.

### 3.4. The nature and seriousness of the danger to any person or the community

It cannot be disputed that Fields has the means and motivation to source and distribute drugs throughout Anchorage. While Fields may not currently be able to distribute drugs from the Chelsea Inn, due to its seizure, that does not prevent her from continuing to distribute elsewhere. Through multiple homicides, violent assaults, law enforcement searches, and even the death of her father due to their involvement in the drug trade, Fields has repeatedly shown that she will not stop. Controlled substances and the circumstances surrounding their distribution are present an inherent risk to the community. Fields's presence in the community heightens that risk, both through her own distribution efforts and her enthusiastic support of fellow narcotics traffickers.

**CONCLUSION**

No matter how restrictive, all sets of release conditions "contain one critical flaw. In order to be effective, they depend on [the defendant's] good faith compliance." *Hir*, 517 F.3d at 1092 (citing *United States v. Tortora*, 922 F.2d 880, 886 (1st Cir. 1990)). For years Fields has flouted federal, state, and local laws. She has personally trafficked drugs and provided a safe haven for other traffickers who have pushed their narcotics into the community. Above and beyond the inherent danger posed by someone who distributes drugs, Fields's pattern of behavior and years of material support for fellow traffickers gives

*U.S. v. Fields*
3:25-cr-00050-SLG-KFR　　　Page 12 of 13
Case 3:25-cr-00050-SLG-KFR　　Document 7　　Filed 08/25/25　　Page 12 of 13

this Court no basis to conclude that she would follow this Court's orders. She has a proven track record of frustrating criminal investigations in which she is involved and violating conditions of release when she faces criminal charges. Accordingly, there are no conditions that will reasonably assure her appearance as required and the safety of the community. The Government respectfully requests the Court to enter an order for pretrial detention.

As of the time of filing, Fields has not proposed a release plan. In the event she does, the Government intends to file a supplement to address the specifics of that plan.

RESPECTFULLY SUBMITTED August 25, 2025 at Anchorage, Alaska.

MICHAEL J. HEYMAN
United States Attorney

s/ *C. Cody Tirpak*
C. CODY TIRPAK
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2025 a true and correct copy of the foregoing was served electronically on all counsel of record.

s/ *C. Cody Tirpak*

*U.S. v. Fields*
3:25-cr-00050-SLG-KFR    Page 13 of 13
Case 3:25-cr-00050-SLG-KFR    Document 7    Filed 08/25/25    Page 13 of 13